PEOPLE *ex rel.* LYNCH *v.* MANHATTAN RAIL-
WAY COMPANY.

*N. Y. Supreme Court, Chambers; April,* 1888.

1. *Mandamus; street obstruction by chartered railway.*] Mandamus
, to the commissioner of public works directing him to remove street
obstructions, is not the proper remedy where the alleged obstruc-
tions are erected by a corporation under color of legislative authority
in a comparatively uninhabited part of the city and cause no pres-
ent substantial loss.

Application for mandamus.

Mrs. Sarah A. Lynch applied for a writ of mandamus to
be directed to the Manhattan Railway Company and John ·
Newton, commissioner of public works, to compel the latter
to remove certain structures of the railway company.

The relator, owner of property on the east side of Eighth
avenue from One hundred and fifty-fifth street to center of
One hundred and fifty-seventh street, and on the west side
of the avenue from One hundred and fifty-fifth street to One
hundred and fifty-ninth street, complained that defendant
erected certain structures or frame buildings amounting in
the aggregate to between thirty and forty upon and directly
opposite her property without her consent and against her
remonstrances. These buildings, built upon, and on both
sides of the elevated structure of the railway, and projecting
over and upon the relator's land, were used for the storage
of coal, oil, etc., and were alleged to be of such a nature as
to render it impossible for people to pass or walk along the
avenue without great inconvenience, not only because of the
dropping of oil, ashes, and water therefrom, but also on
account of the incumbrance and nuisance, and that by reason
of the obnoxious odor emanating from the coal, gas, oil, etc.,
and continuous discharge of the same, from such structures in
and upon her land, the appearance of the property had been
rendered deplorable, and it was impossible to properly con-

duct persons desiring to purchase the property or to erect buildings thereon.

Among the papers was a report of the superintendent of incumbrances to the commissioner of public works, stating that the structures were used for facilitating the business of the road, but were undoubtedly obstructions to the street in the same way that the regular stations were obstructions, but were much more extensive, being at a terminal station.

The defendant, in an affidavit by its vice-president, R. M. Gallaway, alleged, among other things, that the structures were absolutely essential to the operation of the road, and that if removed or destroyed, or if their use was interfered with, such action would at once stop completely the operation of the Sixth avenue line of the elevated road, and that the structures have been erected and used since 1882, to within about one year ago, without any objection, complaint, or remonstrance from the owners of property on either side of Eighth avenue, or from the corporate authorities of the city of New York.

The commissioner of public works, in an affidavit produced in opposition to the motion, after stating that the balance of appropriation for the bureau was totally inadequate to authorize any expenditure for this purpose, stated that he had received two complaints from the relator and had referred the matter to Morgan J. O'Brien, the corporation counsel, and upon advice received from him, had declined to act in the matter.*

* The principal grounds assigned in the opinion of the corporation counsel why the commissioner of public works should not act on the complaint of the relator, were, (1) that it would be inappropriate for the city to take action in the premises, inasmuch as proceedings were pending for the opening of a public park, to be known as High Bridge Park, of which the land in question was to form a part, and, (2) that although similar language to that in the condition of the authority given by the rapid transit commissioners to the railroad company for the " construction of such supports, turnouts, switches, sidings, connections, landing-places, stations, buildings, platforms, stairways, elevators, telegraph and signal devices, and such other requisite appliances upon

People *ex rel.* Lynch *v.* Manhattan Railway Co.

*John T. O'Connor*, for relator.—The erection of the houses and sheds was illegal, in that the Law of 1872, c. 885, under which the railroad company was created and the several acts amendatory thereof, in no wise empowered them to erect or build the same, except on the purchase or lease of the premises upon or adjoining which such structures were to be erected. The writ of mandamus is of an equitable nature, and it may direct the removal of highway and consequent taking of lands therefor (People *v.* Dutchess, etc. R. R. Co., 58 *N. Y.* 152), and to remove incumbrances in streets, though placed there by the authority of the common council (People *v.* Mayor, 59 *How. Pr.* 277). Even if there is a common law remedy, this right is given in special cases, and this is one of them. Mandamus will issue, even though there is a remedy by certiorari or action for damages (People *v.* Taylor, 1 *Abb. Pr. N. S.* 200). Assuming that the relator has a right at law to recover damages for trespass, judgment in such case would not remove the obstructions. This proceeding is the only remedy which will effect this.

*Davies & Rapallo*, counsel for defendants.—The issuing of a peremptory mandamus rests in the sound discretion of the court (People *ex. rel.* McClellan *v.* Dowling, 37 *How. Pr.* 394; People *v.* Booth, 49 *Barb.* 31 ; People *v.* Contracting Board, 27 *N. Y.* 378, 381 ; Judges of Oneida, C. P. *v.* People, 18 *Wend.* 79; People *v.* Supervisors of Albany, 12 *Johns.* 414; Rex *v.* Justices of Wilts, 2 *Chitty*, 257; People *ex rel.* Lorillard *v.* Supervisors of Westchester, 15 *Barb.* 607). The issue of a writ to compel the commissioner of public works to remove obstructions in the street, can be

the route or routes and in the location determined by the commissioners, as shall be proper for the purpose of rapid transit railways and as shall be necessary to meet the requirements of the travelling public," had been severely criticized by the court of appeals (104 *N. Y.* 1), as being beyond the powers conferred upon the rapid transit commissioners, yet in the particular instance of this important terminal station it might be held that the authority given by the commissioner was legally sufficient.

properly prayed for only on the grounds (*a*) that such removal is part of the public duty of such officer, (*b*) that the improper failure to perform which public duty works special damage to relator (People *v.* Supervisors, 11 *N. Y.* 563; People *ex rel.* Stevens *v.* Hyatt, 66 *Id.* 606; People *v.* Contracting Board, 33 *Id.* 382; People *v.* Croton Aqueduct, 49 *Barb.* 259). No such obligation or duty can rest upon the commissioner unless the obstructions are unlawful as against the public, and if the works are lawful as against the railroad company and the public authorities, it is immaterial whether they are lawful or unlawful merely as against the relator or whether their maintenance involves the taking of any private property or easement of relator. In such case she has her action at law or in equity. It is no part of the public duty of the commissioner to redress her private wrongs, or to enforce her private rights.

In view of the fact that no improvements are contemplated by the owner of the abutting land, as it is within the limits of a proposed public park, the relator suffers no special injury or any inconvenience other than that suffered by any inhabitant of the State who may wish to use Eighth avenue.

The relator has too long acquiesced in the maintenance of the structures and slept upon her rights to entitle her to the writ of mandamus (Fish *v.* Weatherwax, 2 *Johns. Cas.* 215; People *v.* Delaware Common Pleas, 2 *Wend.* 256. The application should therefore be denied, (1) because no duty of removal rests upon the commissioner of public works; that as against the public the structures are not illegal; that the relator has been guilty of laches; and has acquiesced in the maintenance; that the relator can suffer no individual injury, that the public are not inconvenienced. (2.) That the court should exercise its discretion in denying the application, in that a much greater injury would ensue by a stoppage of the road than the public benefit occasioned by the removal of the structures over a portion of the avenue practically never used by the public, and the relator's right is not a clear legal

right. (3.) No peremptory mandamus should in any view issue, as the defendants take issue upon the question of relator's title to the abutting land and as to the relator's individual interest in the enforcement of the law compelling the removal of the obstructions.

*Henry R. Beekman*, counsel to the corporation (*Thomas P. Wickes*, of counsel), for respondent Newton.—The relator has a legal remedy in the premises by an action for damages (Mattlage *v.* N. Y. Elevated R. R. Co., 67 *How. Pr.* 232; Lahr *v.* Metropolitan Elevated R. R. Co., 104 *N. Y.* 268; Drucker *v.* Manhattan R. R. Co., 106 *Id.* 157). The relator having a sufficient remedy at law by an action to recover her damages, the court should refuse to issue its mandamus (People *ex rel.* Dowdney *v.* Thompson, 99 *N. Y.* 641).

Barrett, J.—The application is wholly without merit. The relator seeks to apply the charter provision, which requires the department of public works to keep the streets clear of obstruction, to an alleged infringement of her private rights by the elevated railway. By a mere motion to compel the department to remove structures which, at the present time and under existing circumstances, have not the slightest bearing upon any practical question, she seeks by a short cut what would be the result of a successful action in equity. She has a remedy at law and a remedy in equity. She needs no mandamus, and she is subjected to no present loss or even inconvenience. Besides, the right is not clear, and where that is the case, the party cannot have mandamus, but must resort to an action. There is no public duty imposed upon the department of public works under such circumstances. It cannot treat these structures, erected under claim of legislative authority, upon vacant lots in a substantially uninhabited part of the city, as it would an ash barrel or a news stand in a crowded street. Questions of legal right cannot be settled in this summary way, and the application should be denied, with costs.